CUAUHTEMOC ORTEGA (Bar No. 257443)
Interim Federal Public Defender
JENNIFER FRIEDMAN (Bar No. 128927)
(E-Mail: Jennifer_friedman@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-3143
Facsimile: (213) 894-0081

Attorneys for Defendant
SHANT KARIBLGHOSSIAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SHANT KARIBLGHOSSIAN,<br><br>　　　　　Defendant. | Case No. CR 13-00318-CAS<br><br>**MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1) (A) AND EXHIBITS** |

　　　　Defendant Shant Kariblghossian, by and through his attorney Deputy Federal Public Defender Jennifer Friedman, hereby files this Motion in Support of his Request for Compassionate Release. This motion is based on the attached memorandum of points and authorities, exhibits, and all the records in this case.

　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　CUAUHTEMOC ORTEGA
　　　　　　　　　　　　　　　Interim Federal Public Defender

DATED: September 21, 2020　　　By　*/s/ Jennifer Friedman*
　　　　　　　　　　　　　　　JENNIFER FRIEDMAN
　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　Attorney for SHANT KARIBLGHOSSIAN

# **TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND....................................................................1

        A.      Procedural History................................................................1

        B.      Shant Kariblghossian's Background ....................................2

        C.      Shant Kariblghossian's Health Problems ............................2

                1.      Diabetes....................................................................2

                2.      Obesity ......................................................................3

                3.      Hypertension ............................................................3

                4.      Hepatitis C ...............................................................3

                5.      Mental Illness ..........................................................3

        D.      The COVID-19 Health Crisis................................................3

        E.      Shant Kariblghossian has *three* medical conditions and mental illness
                which place him at in danger of contracting a severe illness from
                COVID-19 according to the Center for Disease Control. ...........................5

        F.      Mr. Kariblghossian has exhausted his administrative remedies .................5

        G.      Mr. Kariblghossian's release plan .......................................6

III.    ARGUMENT ...........................................................................................6

        A.      Legal Standard........................................................................6

        B.      Mr. Kariblghossian has fully exhausted his administrative remedies..........8

        C.      Mr. Kariblghossian's underlying health conditions in light of the
                COVID-19 pandemic are "extraordinary and compelling" under 18
                U.S.C. § 3852(c)(1) ...............................................................8

i

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

1.     Mr. Kariblghossian can demonstrate "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) ........................ 8

2.     Mr. Karibghossian does not represent a continuing danger to the community ........................................................................... 12

IV.   CONCLUSION ................................................................... 13

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                          **PAGE(S)**

*Doe v. Barr*,
  2020 WL 1820667 (N.D. Cal. Apr. 12, 2020) ........................................................ 12

*Doe v. Barr*,
  2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) ........................................................ 12

*Durel B. v. Decker*,
  2020 WL 1922140 (D.N.J. Apr. 21, 2020) ............................................................. 12

*United States v. Beck*,
  2019 WL 271605 (M.D.N.C. Jun 28, 2019) ............................................................ 9

*United States v. Cantu*,
  2019 WL 2498923 (S.D. Tex. Jun. 17, 2019) ......................................................... 9

*United States v. Wade*,
  No. 2:99-cr-00257-CAS (C.D. Cal. Apr. 13, 2020) ............................................... 9

*United States v. Amarrah*,
  2020 WL 2220008 (E.D. Mich. May 7, 2020) ....................................................... 11

*United States v. Brown*,
  411 F. Supp. 3d. 446 (S.D. Iowa 2019) ................................................................ 10

*United States v. Colvin*,
  2020 WL 1613943 (D. Conn. Apr. 2, 2020) ......................................................... 10

*United States v. Hansen*,
  2020 WL 1703672 (E.D.N.Y. Apr. 8, 2020) ......................................................... 11

*United States v. Johnson*,
  No. 15-cr-125, 2020 WL 2515856 (D.D.C. May 16, 2020) .................................. 12

*United States v. Krokos*,
  Dkt. 1016, CR 12-527-GW (C.D. Cal. May 1, 2020) ........................................... 9

*United States v. Lavy*,
  2020 WL 3218110 (D. Kan. June 15, 2020) ......................................................... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**FEDERAL CASES**                                                         **PAGE(S)**

*United States v. Parker*,
    2020 WL 2572525 (C.D. Cal. May 21, 2020) ........................................... 11

*United States v. Pena*,
    __ F. Supp. 3d. __ (S.D.N.Y. May 8, 2020) ........................................... 11

*United States v. Perez*,
    2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) ............................................. 9

*United States v. Rodriguez*,
    2020 WL 1627331 (E.D. Pa. Apr. 1, 2020) ............................................ 11

**FEDERAL STATUTES**

18 U.S.C. 3582 ........................................................................... *passim*

21 U.S.C. 841 ................................................................................. 1

**MISCELLANEOUS**

*Achieving a Fair and Effective COVID-19 Response:  An Open Letter to
Vice-President Mike Pence, and Other Federal, State, and Local Leaders
from Public Health and Legal Experts in the United States* (March 2, 2020)
at 4, available at https://bit.ly/2W9V6oS .......................................... 4

April 23, 2020, available at
https://www.nytimes.com/2020/04/23/health/coronavirus-patients-risk.html
(last visited September 8, 2020).................................................... 5

Center for Disease Control Defining Adult Overweight and Obesity
https://www.cdc.gov/obesity/adult/defining.html ............................... 3

*Clinical Infectious Diseases* 45(8) (2007), available at
https://doi.org/10.1086/521910;................................................... 4

Craig McCarthy, *Top Rikers Doctor: Coronavirus "Storm is Coming,"*
N.Y. Post (Mar. 19, 2020), available at https://tinyurl.com/yx88rxoq............. 4

https://tinyurl.com/y9chuzkm (last visited August 20, 2020) ..................... 5

iv

# TABLE OF AUTHORITIES

**MISCELLANEOUS**                                                      **PAGE(S)**

https://www.bop.gov/coronavirus/index.jsp ........................................................ 3

https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/managing-
stress-anxiety.html (last visited September 8, 2020) ................................... 9

Human Rights Watch, *The Answer Is No: Too Little Compassionate
Release in U.S. Federal Prisons* (2012) ....................................................... 7

Inspector General, *The Federal Bureau of Prisons' Compassionate Release
Program* (April 2013) ..................................................................................... 7

Joseph A. Bick, "Infection Control in Jails and Prisons," ................................. 4

Joseph Neff, The Marshall Project, *Federal Prisons Agency 'Put Staff in
Harm's Way' of Coronavirus* (April 3, 2020),
https://www.themarshallproject.org/2020/04/03/federal-prisons-agency-
put-staff-in-harm-s-way-of-coronavirus (last visited on September 8, 2020) ................. 3

Letter to President Trump (March 27, 2020), available at
https://tinyurl.com/qkutb64 ........................................................................... 4

Office of the Attorney General, Prioritization of Home Confinement as
Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020),
https://tinyurl.com/ybqk9dzv ......................................................................... 4

Report available at https://oig.justice.gov/reports/2013/e1306.pdf ................................ 7

Report available at
https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf .................... 7

Section 603, "Increasing the Use and Transparency of Compassionate
Release" ........................................................................................................ 7

Vice, "Sick Staff, Inmate Transfers, and No Tests: How the U.S. is Failing
Federal Inmates as Coronavirus Hits" (Mar. 24, 2020), available at
https://tinyurl.com/u5rtujz ............................................................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Shant Kariblghossian, a BOP inmate with less than 24 months left to serve of his 120 month drug-related sentence, is at risk of dying in prison as a result of numerous medical conditions that place him at extreme danger if infected with COVID-19. Recent medical records confirm that Mr. Kariblghossian suffers from type II diabetes, hepatitis C, hypertension, retinopathy, neuropathy and obesity. His recent placement in protective custody at Schuylkill FCI has only exacerbated his deteriorating medical condition and mental health. Given the unique risks he faces from COVID-19, Mr. Kariblghossian requests that this Court exercise its discretion under 18 U.S.C. § 3852(c)(1)(A) and allow him to be immediately placed on supervised release with conditions consistent with the original judgment. Mr. Kariblghossian's compromised physical condition and his prospect of severe symptoms or even death are compelling reasons for the court to exercise its discretion.

## II. FACTUAL BACKGROUND

### A.    Procedural History

Mr. Kariblghossian pled guilty to two counts of Distribution of at least 50 grams of Methamphetamine in violation of 21 USC 841(a)(1),(b)(1)(A), and on February 9, 2015, was sentenced to serve 120 months in prison. (Judgment, February 9, 2015, Dkt. No.40.) The criminal charges in this case resulted from Mr. Kariblghossian selling methamphetamine to an undercover law enforcement officer on two occasions in 2011. Mr. Kariblghossian did not receive any monetary benefits from the sale of the drugs but was instead provided methamphetamine to support his drug habit.[1] (Presentence Investigation Report (hereafter "PSR" at 5 ¶12.) As of this filing, Mr. Kariblghossian's current release date is August 2, 2022, leaving less than 24 months of his original 120

---

[1]  Substance use disorder is considered a psychiatric illness in the Diagnostic and Statistical Manual (DSM-5).

month sentence. (Ex. 1 Bureau of Prisons Inmate Locator.) Mr. Kariblghossian has served more than 75% of his sentence as of this filing.

**B.    Shant Kariblghossian's Background**

      Shant Kariblghossian was born on September 28, 1984, in Westminster, California and was raised in Montebello. (PSR at 14 ¶ 57.)  Mr. Kariblghossian was raised by his parents Ara Boghossian and Hasmig Boghossian until his mother's death from cancer in 2003. (Ex. 2 Death Certificate Hasmig Boghossian dated June 18, 2003.)  Mr. Kariblghossian who was very close to his mother was just 16 years old when she was first diagnosed with cancer. Her illness was very difficult for him and when she passed away three years later, he became very depressed and his drug use increased significantly. (PSR at 14¶ 59-60.)

**C.    Shant Kariblghossian's Health Problems**

      **1.    Diabetes**

      Mr. Kariblghossian suffers from type 2 diabetes mellitus. (Ex. 3, Bureau of Prisons Health Services Inmate Intra-System Transfer, February 4, 2020.) As a result, he is currently taking several different medications each day to control his condition, including Metformin, Atorvastatin, and Glipizide. (Ex. 4 Bureau of Prisons Health Services Clinical Encounter, July 14, 2020.) While not currently taking insulin, he has been prescribed insulin at various times during his prison commitment. (Ex. 5, Clinical Encounter December 27, 2019.)

      Mr. Kariblghossian also suffers from retinopathy, an eye condition caused by uncontrolled diabetes, as well as neuropathy in his back, also likely resulting from his diabetes. (Ex. 3.)

2

### 2.   Obesity

Mr. Kariblghossian suffers from obesity: his Body-Mass Index (BMI) is 31.0-31.9 which puts him in the obese range.[2] (*Id.*)

### 3.   Hypertension

Mr. Kariblghossian suffers from hypertension (Ex. 3) He is currently taking Lisinopril to treat this condition. (Ex. 4.)

### 4.   Hepatitis C

While currently in remission, Mr. Kariblghossian has been diagnosed and treated for Hepatitis C while in prison. (Ex. 3.)

### 5.   Mental Illness

Mr. Kariblghossian suffers from obsessive compulsive disorder and anxiety. (*Id.*)

## D.   The COVID-19 Health Crisis

The federal Bureau of Prisons (BOP) reported its first inmate case of COVID-19 on March 21, 2020. For the following week, it issued reassuring messages that the situation was under control. The months that followed have proven that nothing was further from the truth. As of September 8, 2020, 1,861 federal inmates and 643 BOP staff have had confirmed positive test results for COVID-19. [3] One-hundred and eighteen federal inmates and two staff members have died. *Id*. This is likely an underestimate of the number of infected inmates. In some cases, BOP has ordered employees exposed to inmates with the virus to continue reporting to work and this, the infection has likely spread wider than reported.[4]

Public health experts have warned that incarcerated individuals "are at special

---

[2] *See* Center for Disease Control Defining Adult Overweight and Obesity https://www.cdc.gov/obesity/adult/defining.html

[3] https://www.bop.gov/coronavirus/index.jsp

[4] Joseph Neff, The Marshall Project. *Federal Prisons Agency 'Put Staff in Harm's Way' of Coronavirus* (April 3, 2020), https://www.themarshallproject.org/2020/04/03/federal-prisons-agency-put-staff-in-harm-s-way-of-coronavirus (last visited on September 8, 2020).

risk of infection" and are "less able to participate in proactive measures to keep themselves safe."[5] Indeed, the conditions in BOP facilities provide a uniquely hospitable environment for COVID-19 to spread, as the numbers above demonstrate.[6] Recognizing the risks that correctional facilities pose to both inmates and employees, members of Congress asked the BOP on March 19, 2020, to allow for the immediate release of elderly, non-violent inmates.[7] The following week, Attorney General Barr urged the Director of the BOP to prioritize home confinement for vulnerable individuals.[8] On March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence.[9]

Although the BOP is taking steps to minimize the spread of the disease, "we cannot change the fundamental nature of jail."[10] Prison facilities involve a number of people in small areas, sharing spaces and bathrooms and surfaces, using the same

---

[5] *Achieving a Fair and Effective COVID-19 Response:  An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States* (March 2, 2020) at 4, available at https://bit.ly/2W9V6oS.

[6] *See, e.g.*, Joseph A. Bick, "Infection Control in Jails and Prisons," *Clinical Infectious Diseases* 45(8): 1047-1055 (2007), available at https://doi.org/10.1086/521910; Vice, "Sick Staff, Inmate Transfers, and No Tests: How the U.S. is Failing Federal Inmates as Coronavirus Hits" (Mar. 24, 2020), available at https://tinyurl.com/u5rtujz.

[7] Letter of Representatives Jerrold Nadler and Karen Bass (March 19, 2020) ("DOJ and BOP must also do all they can to release as many people as possible who are currently behind bars and at risk of getting sick.  Pursuant to 18 U.S.C. 3582(c)(1)(A), the Director of the Bureau of Prisons may move the court to reduce an inmate's term of imprisonment for "extraordinary and compelling reasons.").

[8] Office of the Attorney General, Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic (Mar. 26, 2020), https://tinyurl.com/ybqk9dzv.

[9] Letter to President Trump (March 27, 2020), available at https://tinyurl.com/qkutb64.

[10] Craig McCarthy, *Top Rikers Doctor: Coronavirus "Storm is Coming,"* N.Y. Post (Mar. 19, 2020), available at https://tinyurl.com/yx88rxoq.

phones and the same computer terminals. In this crisis, the only universally recommended solution is to reduce the prison population.

**E.**    **Shant Kariblghossian has *three* medical conditions and mental illness which place him at in danger of contracting a severe illness from COVID-19 according to the Center for Disease Control.**

Mr. Kariblghossian has *three* independent medical conditions that put him at heightened risk from COVID-19: namely, Type 2 diabetes, obesity, and hypertension. The Center for Disease Control states that persons with Type 2 diabetes mellitus and obesity (defined as a body mass index [BMI] of 30 or higher) are at an increased risk of severe illness from COVID-19, and that persons with "hypertension or high blood pressure" are also potentially at higher risk.[11] As described *supra* Section II.C, Mr. Kariblghossian suffers from all of these conditions, and is therefore at increased risk of serious illness or potentially death from COVID-19. A study of patients from New York, an early hotbed of COVID-19, found that the majority of those who required hospitalization for COVID related symptoms, had underlying health conditions and of the conditions, diabetes, obesity and high blood pressure were the most common.[12]

**F.**    **Mr. Kariblghossian has exhausted his administrative remedies**

On May 18, 2020, the Warden received Mr. Kariblghossian's Request for Compassionate Release in accordance with the "First Step Act" and denied his request on June 12, 2020. (Ex. 6, Warden's Denial June 12, 2020.) In rejecting Mr. Kariblghossian's request, the Warden explicitly acknowledged Mr. Kariblghossian's

---

[11]   Center for Disease Control, "Coronavirus Disease 2019 (COVID-19): Persons of Any Age with Underlying Medical Conditions," https://tinyurl.com/y9chuzkm (last visited August 20, 2020).

[12]   New York Times "Nearly All Patients Hospitalized With Covid-19 Had Chronic Health Issues, Study Finds" April 23, 2020, available at https://www.nytimes.com/2020/04/23/health/coronavirus-patients-risk.html (last visited September 8, 2020).

medical conditions and his susceptibility to serious complications from COVID if contracted. (*Id.*) More than 30 days has passed since the denial. (*Id.*)

**G.    Mr. Kariblghossian's release plan**

If released from prison on supervised release as ordered in the original judgement, Mr. Kariblghossian will be supervised by the United States Probation Department for a period of five years. He will be drug tested and participate in either an in-patient or out-patient drug program. He will reside with his brother and his father at their home in Bellflower unless he is ordered into a residential drug treatment program. Mr. Kariblghossian will receive medical treatment for his diabetes, and diabetes related complications, hypertension and obesity from his primary care physician Dr. M.W Coates and at Long Beach Memorial Medical Center. (Ex. 7, Letter from Dr. Coates, August 17, 2020.) He will receive psychiatric care and treatment from Bellflower Behavioral Health Hospital. (Ex. 8, Release Plan Authored by De Anna Dove, September 2020.) Mr. Kariblghossian has tremendous community support as attested to by the willingness of his brother to provide care and support and the many letters written to the Court requesting Mr. Kariblghossian's release. (Ex. 9, Letters of Support.) Once Mr. Kariblghossian has completed a drug treatment program and if he is able to work, his brother plans to employ him at his business. (Ex. 8.)

## III. ARGUMENT

**A.    Legal Standard**

The court has the authority to reduce Mr. Kariblghossian's sentence for "extraordinary and compelling reasons" under 18 U.S.C. 3582(c). Specifically, section 3582(c)(1)(A) allows the Court to modify Mr. Kariblghossian's term of imprisonment if he proves (1) "extraordinary and compelling reasons," exist consistent with the factors available under 18 U.S.C. § 3553(a); (2) that he is not a danger to the community, and (3) that the release is consistent with the policies of the Sentencing Guidelines. Finally, in addition to meeting these substantive requirements, he must also demonstrate that he

has exhausted his administrative options. (18 U.S.C. 3582 (c)(1)(A)(i); USSG § 1B1.13).

Before, the First Step Act, Section 3582(c)(1) permitted only the Bureau of Prisons to initiate a compassionate release request. And the BOP did so quite sparingly, making an average of only 24 requests of an approximately 218,000 inmates in BOP's custody. Dep't of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, at 1 (April 2013) ("OIG Report").[13] The BOP received significant criticism for its sparing use of the program. Human Rights Watch, *The Answer Is No: Too Little Compassionate Release in U.S. Federal Prisons*, at 8 (2012) ("Senior BOP officials have failed to pay appropriate attention to how wardens define and exercise their discretion in some instances, and in others, have nurtured a culture of "no" that influences how wardens respond to prisoner requests. . . . Ranging from benign neglect to active resistance to program reform, DOJ oversight has muted the promise of compassion envisioned by Congress.").[14] The Department of Justice's Office of Inspector General itself concluded that the robust use of compassionate release would result in significant cost savings without posing serious risk to the safety of the community, but that the BOP's use of the program was ad hoc and disorganized. *See* OIG report at i-iv.

In passing the First Step Act, Congress took a significant step away from the BOP's parsimonious use of compassionate release and toward a more robust application of the program. *See* First Step Act of 2018, P.L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) (entitling Section 603, "Increasing the Use and Transparency of Compassionate Release"). Most importantly, it loosened the grip the BOP had on making such motions and moved decision-making back to the sentencing court.

---

[13]  Report available at https://oig.justice.gov/reports/2013/e1306.pdf.
[14]  Report available at https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf.

7

Finally, Section 3582(c)(1) permits a defendant to file a motion with the sentencing court "after the defendant has fully exhausted all administrative rights to appeal the failure of the Bureau of Prisons to bring a motion . . . or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

**B.     Mr. Kariblghossian has fully exhausted his administrative remedies**

Section 3582(c)(1)(A)(i) permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Mr. Kariblghossian's administrative request for compassionate release was denied by the warden on June 12, 2020. More than 30 days has passed since the warden's denial. There has been no change in circumstances other than more federal inmates have contracted COVID-19. Nothing further is required to exhaust his administrative remedies.

**C.     Mr. Kariblghossian's underlying health conditions in light of the COVID-19 pandemic are "extraordinary and compelling" under 18 U.S.C. § 3852(c)(1)**

**1.     Mr. Kariblghossian can demonstrate "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i)**

Under Section 3582(c)(1)(A)(i), a defendant seeking compassionate relief must show "extraordinary and compelling reasons" warranting a modification of his sentence. Notably, the statute does not define "extraordinary and compelling reasons." Instead, the Court must look to "applicable policy statements issued by the Sentencing Commission" for guidance as to this standard. 18 U.S.C. § 3582(c)(1)(A). The U.S. Sentencing Commission has issued a policy statement on this point. Commentary to the policy statement sets out four categories of "extraordinary and compelling reasons": (1)

a terminal illness; (2) health issues that diminish a defendant's ability to provide self-care; (3) advanced age; and (4) "other reasons" as defined by the Director of the BOP. U.S.S.C. § 1B1.13 cmt. n.1(A). Additionally, the court is free to consider any factor that it could consider under section 3553(a). *U.S. v. Beck*, 2019 WL 271605, at *6, 9 (M.D.N.C. Jun 28, 2019); *U.S. v. Cantu*, 2019 WL 2498923, at *5 (S.D. Tex. Jun. 17, 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.C. §1B1.13 cmt. n. 1(A)-(C) warrant granting relief."); *U.S. v. Wade*, No. 2:99-cr-00257-CAS, Dkt. No. 633 at 6-7 (C.D. Cal. Apr. 13, 2020) (collecting cases).

As described above, Mr. Kariblghossian's health problems—including Type 2 diabetes, obesity, and hypertension—all put him at serious risk of contracting a severe illness if sickened with COVID-19. (Ex. 3,7) Mr. Kariblshossian takes numerous medications including Metformin, Atorvastatin, Lisinopril and Glipizide to control his diabetes and hypertension. (Ex. 7) Additionally, the COVID-19 pandemic has caused an increase in his symptoms of mental illness and in particular, anxiety, which in turn exacerbates his chronic health problems.[15]

These health and mental health conditions fall under the second and fourth categories of the policy statement above. With respect to the second category, as this Court has held, "medical conditions—which make [a defendant] especially vulnerable to serious illness if he contracts COVID-19—'substantially diminish' his ability 'to provide self-care within the environment of a correctional facility.'" *United States v. Krokos*, Dkt. 1016, CR 12-527-GW (C.D. Cal. May 1, 2020) (quoting U.S.S.C. § 1B1.13 cmt. n.1(A)(ii)). Other decisions are in accord. *United States v. Perez*, 17-cr-

---

[15]   Center for Disease Control "Coping with Stress" https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/managing-stress-anxiety.html (last visited September 8, 2020).

513-3-AT, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) ("Confined to a small cell where social distancing is impossible, [defendant] cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus."); *United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding that defendant with diabetes and hypertension, which increase her COVID-19 risk, "satisfied the guidelines's 'serious medical conditions' test").

Alternatively, as many other courts have found, chronic medical conditions that increase a defendant's COVID-19 risk can also amount to "extraordinary and compelling reasons" under the Guidelines' fourth "catchall" category for "other reasons." *See* U.S.S.C. § 1B1.13 cmt. n.1(D). To be sure, the Guidelines provide that these "other reasons" must be determined by the Director of the BOP. But as many courts have noted, this prior policy statement—issued prior to the passage of the First Step Act—does not account for the Act's innovation of allowing defendant-initiated compassionate release requests. Indeed, the policy statement that purports to set out the contours of the "extraordinary and compelling reasons" standard is premised on a compassionate release motion filed by the Director of the BOP, and states under what conditions the Court can grant a motion filed by the BOP. *See* U.S.S.G. § 1B1.13, cmt. n.4 (a "reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons."). Because the current policy statement pre-dates the legislation it purports to administer, it is not an "applicable policy statement" under the Act and thus cannot limit a court's power to grant release. As such, courts nationwide have held that a Court is not delimited by the criterion enumerated in 1B1.13. *See United States v. Fleming*, CR 17-362-AB (C.D. Cal. June 24, 2020) (collecting cases). Instead, the most logical reading of the statute and the policy statement is that "the district court assumes the same discretion as the BOP Director when it considers a compassionate release motion properly before it." *United States v. Brown*, 411 F. Supp. 3d. 446, 451 (S.D. Iowa 2019).

Thus, this Court can—and should—hold that, under section 1B1.13's "other reasons" or "catchall" provision, Mr. Kariblghossian has shown "extraordinary and compelling reasons" favoring modification of his sentence, based on his special risk of illness from COVID-19. Other courts have so held for defendants with similar medical conditions who face heightened risks from COVID-19 infection. *See*, *e.g.*, *United States v. Parker*, 2:98-cr-00749-CAS, 2020 WL 2572525, at * (C.D. Cal. May 21, 2020) Dkt. 965 at 17, 21 (granting compassionate release to the former "leader[ ] of a drug distribution network," serving a life sentence in part because, "[s]ince the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting "extraordinary and compelling" circumstances that may justify compassionate release"); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *1 (E.D. Mich. May 7, 2020) (finding extraordinary and compelling circumstances for defendant with "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma"); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *8 (E.D. Pa. Apr. 1, 2020) (explaining that "the confluence of COVID-19 and" the defendant's diabetes, hypertension, and liver abnormalities "makes this circumstance extraordinary and compelling"); *United States v. Hansen*, 2020 WL 1703672, at *4, 8 (E.D.N.Y. Apr. 8, 2020) (granting motion in part because of defendant's two heart attacks and diagnoses of heart disease and hypertension while in prison); *United States v. Pena*, __ F. Supp. 3d. __, 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]").

Not only is Mr. Kariblghossian at heightened risk of COVID-19 infection because of his medical conditions, but additionally his mental illness increases his vulnerability to Covid-19 and Covid-19 related complications. While depression and anxiety alone may not constitute "compelling and extraordinary reasons" Courts have found

11

"compelling and extraordinary reasons" in similar situations where symptoms of mental illness negatively affect other pre-existing conditions. *See e.g. United States v. Lavy,* 2020 WL 3218110, at *5 (D. Kan. June 15, 2020) (finding associations between major depressive disorder and "atypical immune responses")*United States v. Johnson,* No. 15-cr-125, 2020 WL 2515856 (D.D.C. May 16, 2020) (granting compassionate release due to increased vulnerability to COVID-19 flowing from mental illness); *Doe v. Barr,* No. 20-cv-02263 (RMI), 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) (ordering the release of a foreign national, detained in a county jail awaiting for his removal proceedings, in part because he suffers from PTSD and "[g]rowing evidence demonstrates that PTSD, anxiety/stress, and depression can lead to decreased immune response and increased risk of infections" and thus "compound his susceptibility" to COVID-19"); *Durel B. v. Decker,* No. CV 20-3430 (KM), 2020 WL 1922140 (D.N.J. Apr. 21, 2020); *Fraihat v. ICE,* No. 5:19-cv-1546 (JGB), slip op. at 21 n.20, 22 n.21 (C.D. Cal. Apr. 20, 2020); *Doe v. Barr,* No. 20-CV-02141-LB, 2020 WL 1820667 (N.D. Cal. Apr. 12, 2020)

### 2.    Mr. Karibghossian does not represent a continuing danger to the community

Mr. Kariblghossian is not "a danger to the safety of any other person or to the community." *See* U.S.S.G. § 1B1.13(2). He is currently serving a sentence for a non-violent offense, drug distribution, a crime he committed because he suffers from substance use disorder. (PSR at 4 ¶ 8, 5 ¶ 12) His prior convictions are drug related and non-violent. (PSR at 6-11 ¶ 27-42) The release plan described supra. IIG ensures that Mr. Kariblghossian will be supervised and receive treatment for his medical conditons, substance use disorder and mental illness. Hence, Mr. Kariblghossian does not represent a continuing danger to the community and should not be denied compassionate release on this ground.

# IV. CONCLUSION

Based on the foregoing, Mr. Kariblghossian respectfully requests this Court grant the motion and reduce his sentence to time-served with conditions on supervised release the Court deems appropriate. This will help ensure the safety of both Mr. Kariblghossian and the community. It will provide the services necessary to help Mr. Kariblghossian stay sober, but also receive the medical and mental health care he requires. Importantly, it will remove him from a prison where it is impossible for him to take the precautionary measures necessary to keep him from contracting COVID-19.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: September 21, 2020          By: */s/ Jennifer Friedman*

JENNIFER FRIEDMAN
Deputy Federal Public Defender

13

# EXHIBIT 1

 Federal Bureau of Prisons

*Correctional Excellence. Respect. Integrity.*

| Home | About Us | Inmates | Locations | Careers | Business | Resources | Contact Us |

# Find an inmate.

Locate the whereabouts of a federal inmate incarcerated from 1982 to the present. Due to the First Step Act, sentences are being reviewed and recalculated to address pending Good Conduct Time changes. As a result, an inmate's release date may not be up-to-date. Website visitors should continue to check back periodically to see if any changes have occurred.

| Find By Number | Find By Name |

**Type of Number**
[ BOP Register Number ▼ ]

**Number**
[ 64876-112 ]    **Search**

Result using number **64876-112**

🗑 Clear Form



## SHANT N KARIBLGHOSSIAN

Register Number: 64876-112

Age: 35
Race: White
Sex: Male

Located at: **Schuylkill FCI**

Release Date: 08/02/2022

**Related Links**

Facility Information
Call or email
Send mail/package
Send money
Visit
Voice a concern

About the inmate locator & record availability ▸

 Federal Bureau of Prisons    Protecting Society. Changing Lives.

**About Us**
About Our Agency
About Our Facilities
Historical Information
Statistics

**Inmates**
Find an Inmate
First Step Act
Communications
Custody & Care
Visiting
Voice a Concern

**Locations**
List of our Facilities
Map of our Locations
Search for a Facility

**Careers**
Life at the BOP
Explore Opportunities
Current Openings
Application Process
Our Hiring Process

**Business**
Acquisitions
Solicitations & Awards
Reentry Contracting

**Resources**
Policy & Forms
News Stories
Press Releases
Publications
Research & Reports

**Resources For ...**
Victims & Witnesses
Employees
Federal Executions
Former Inmates
Media Reps

   

# EXHIBIT
# 2

# STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES
## DEPARTMENT OF HEALTH SERVICES

### CERTIFICATE OF DEATH
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 1/93)

| STATE FILE NUMBER | | LOCAL REGISTRATION NUMBER |
|---|---|---|

**DECEDENTS PERSONAL DATA**

| 1. NAME OF DECEDENT — FIRST (Given) | 2. MIDDLE | 3. LAST (Family) |
|---|---|---|
| HASMIG | – | BOGHOSSIAN |

AKA, ALSO KNOWN AS — Include full aka (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER ONE YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| ████953 | 50 | | | FEMALE |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hours) |
|---|---|---|---|---|---|
| SYRIA | ████8949 | YES [X] NO UNK | MARRIED | 06/18/2003 | 2030 |

| 13. EDUCATION — Highest Level/Degree (see worksheet on back) | 14/15. WAS DECEDENT SPANISH/HISPANIC/LATINO? (if yes, see worksheet on back) | 16. DECEDENT'S RACE — Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| 9 | YES [X] NO | WHITE-ARMENIAN |

| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY ( e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| HOMEMAKER | OWN HOME | 23 |

**USUAL RESIDENCE**

| 20. DECEDENT'S RESIDENCE (Street and number or location) |
|---|
| 1507 W. LINCOLN AVE |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| MONTEBELLO | LOS ANGELES | 90640 | 19 | CALIFORNIA |

**INFORMANT**

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, ZIP) |
|---|---|
| HAMO KASBARIAN-BROTHER | 1317 CUESTA WAY, MONTEBELLO, CA 90640 |

**SPOUSE AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE — FIRST | 29. MIDDLE | 30. LAST (Maiden Name) |
|---|---|---|
| ARA | – | BOGHOSSIAN |

| 31. NAME OF FATHER — FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| MARDIROS | – | KASBARIAN | TURKEY |

| 35. NAME OF MOTHER — FIRST | 36. MIDDLE | 37. LAST (Maiden) | 38. BIRTH STATE |
|---|---|---|---|
| ANGEL | – | ARABOGHLI | TURKEY |

**FUNERAL DIRECTOR / LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION |
|---|---|
| 06/21/2003 | ROSE HILLS MEMORIAL PARK 3900 S. WORKMAN MIL ROAD WHITTIER, CA 90601 |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| BURIAL | | 8484 |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| GLENDALE HYE FUNERAL SERVICE | FD 1617 | Thomas W Garcecath | 06/19/2003 V.O. |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | 102. IF HOSPITAL, SPECIFY ONE | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE |
|---|---|---|
| RESIDENCE | IP / ER/OP / DOA | Hospice / Nursing Home / LTC / [X] Decedent's Home / Other |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number and zip code) | 106. CITY |
|---|---|---|
| LOS ANGELES | 1507 W. LINCOLN AVE. | MONTEBELLO |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH | Enter the chain of events — diseases, injuries, or complications — that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) | RESPIRATORY FAILURE | (AT) WEEKS | YES [X] NO |
| Sequentially list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | PULMONARY METASTASES | (BT) MONTHS | REFERRAL NUMBER |
| (C) | METASTATIC COLON CANCER | (CT) YEARS | 109. BIOPSY PERFORMED? YES [X] NO |
| (D) | | (DT) | 110. AUTOPSY PERFORMED? YES [X] NO |
| | | | 111. USED IN DETERMINING CAUSE? YES [X] NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| NO |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date.) | 113A. IF FEMALE, PREGNANT IN LAST YEAR? |
|---|---|
| ANTERIOR PERINEAL RESECTION END LIVER METASTECTOMY 05/15/2001 | YES [X] NO UNK |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|
| Decedent Attended Since (A) 02/09/2001 / Decedent Last Seen Alive (B) 06/13/2003 | Levon Qasabian, M.D. | G66524 | 06/19/2003 |

| 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE |
|---|
| LEVON QASABIAN MD 5901 W. OLYMPIC BLVD LOS ANGELES, CA 90036 |

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hours) |
|---|---|---|---|
| MANNER OF DEATH: Natural / Accident / Homicide / Suicide / Pending Investigation / Could not be determined | YES NO | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|

| 125. LOCATION OF INJURY (Street and number, or location, and city, and ZIP) |
|---|

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|

| STATE REGISTRAR | A | B | C | D | E | FAX AUTH # 273/2377 | CENSUS TRACT 270160106 |
|---|---|---|---|---|---|---|---|

This is a true certified copy of the record filed in the County of Los Angeles,
Department of Health Services if it bears the Registrar's signature in purple ink

JUN 26 2003

2 1 8

DATE ISSUED

Director of Health Services and Registrar

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.



# EXHIBIT
# 3

# Bureau of Prisons
# Health Services
# Inmate  Intra-system Transfer

| | |
|---|---|
| **Reg #:**  64876-112 | **Inmate Name:**  KARIBLGHOSSIAN, SHANT N |

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

Transfer To:  SCH                          Transfer Date: 02/04/2020

**Health Problems**

| Health Problem | Status |
|---|---|
| Diabetes mellitus, type II (adult-onset) | Current |
| Hyperlipidemia, mixed | Current |
| Anxiety state, unspecified | Current |
| Low back pain, lumbago | Current |
|     Nontraumatic. nonspecific LBP | |
| Opioid Use Disorder: Severe | Current |
| Stimulant Related Disorders: Severe: Amphetamine Type Substance | Current |
| Obsessive-Compulsive Disorder | Current |
| Retinopathy, NOS | Current |
|     mild non-proliferative diabetic retinopathy OU | |
| Essential (primary) hypertension | Current |
| Dental caries on smooth surface penetrating into pulp | Current |
| Periapical abscess without sinus | Current |
| Follicular disorder, unspecified | Current |
|     Numerous papules on most of trunk, bil arms and legs. | |
| Screening for other eye conditions | Current |
| Body mass index (BMI) 31.0-31.9, adult | Current |
| Generalized anxiety disorder | Remission |
|     B. h/o meth dependency. | |
|     IIAntisocial traits, moderate to severe. | |
|     III h/o DM, and htn. | |
|     IVIncarceration. | |
|     V51. | |
| Chronic viral hepatitis C | Remission |
|     completed Mavyret 1/28/19, HCV Quant not detected 1/8/20 | |

**Medications:  All medications to be continued until evaluated by a physician unless otherwise indicated. Bolded drugs required for transport.**

**Aspirin 81 MG EC Tab  Exp: 12/23/2020  SIG: Take one tablet (81 MG) by mouth each day ***pill line*****

**Atorvastatin 20 MG TAB  Exp: 06/21/2020  SIG: Take one tablet (20 MG) by mouth every night at bedtime ***pill line*****

**DULoxetine HCl Delayed Rel 60 MG Cap  Exp: 07/14/2020  SIG: Take one capsule (60 MG) by mouth at bedtime ***pill line*****

**Lisinopril 40 MG Tab  Exp: 12/23/2020  SIG: Take one tablet (40 MG) by mouth each day ***pill line*****

**metFORMIN HCl  500 MG Tab  Exp: 01/14/2021  SIG: Take one tablet (500 MG) by mouth twice daily ***pill line*****

**Mirtazapine 30 MG Tab  Exp: 06/23/2020  SIG: Take one tablet (30 MG) by mouth each evening *consent form on file * ***pill line*****

**Propranolol LA 24 Hour  60 MG Cap  Exp: 06/21/2020  SIG: Take one capsule (60 MG) by mouth each day ***pill line*****

**OTCs:  Listing of all known OTCs this inmate is currently taking.**
    None

**Pending Appointments:**

| Date | Time | Activity | Provider |
|---|---|---|---|
| 12/30/2019 | 00:00 | Psychiatry Follow Up | Psychiatrist |
| 02/05/2020 | 09:30 | Optometry Exam | Optometrist |

**Reg #:** 64876-112          **Inmate Name:** KARIBLGHOSSIAN, SHANT N

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

| Date | Time | Activity | Provider |
|------|------|----------|----------|
| 06/25/2020 | 00:00 | Chronic Care Visit | Physician |
| 09/27/2020 | 00:00 | PPD Administration | Nurse |
| 05/26/2022 | 00:00 | Preventive Health Visit | Nurse |

**Non-Medecation Orders:**
No Data Found

**Active Alerts:**

| Start Date | Alert | Stop Date | Comments |
|------------|-------|-----------|----------|
| 12/19/2015 | Diversion of Medication | | |

**Consultations:**

**Pending Institutional Clinical Director Action**
No Data Found

**Pending UR Committee Action**
No Data Found

**Pending Regional Review Action**
No Data Found

**Pending Scheduling**
No Data Found

**Pending Consultation**
No Data Found

**Pending Results**
No Data Found

**TB Clearance:**  Yes

Last PPD Date: 09/27/2019          Induration: 0mm
Last Chest X-Ray Date:          Results:
TB Treatment:          Sx free for 30 days: Yes
TB Follow-up Recommended: No

**Sickle Cell:**
Sickle Cell Trait/Disease:      No

**Limitations/Restrictions/Diets:**
Cleared for Food Service: No
Special instructions: HEART HEALTHY MENU OPTION DIET WITH 1800
ADA DIABETIC, NO CONCENTRATED SWEETS DIET

DIABETES

**Comments:**

**Allergies**
No Known Allergies

**Devices / Equipment**
Glucose Meter

**Reg #:** 64876-112      **Inmate Name:** KARIBLGHOSSIAN, SHANT N

SENSITIVE BUT UNCLASSIFIED – This information is confidential and must be appropriately safeguarded.

**Travel:**

Direct Travel: No

Travel Restrictions: None

**UNIVERSAL PRECAUTIONS OBSERVED WHEN TRANSPORTING ANY INMATE:**

**Transfer From Institution:** BEAUMONT LOW FCI      Phone Number: 4097278172

Address 1: 5560 KNAUTH ROAD

Address 2:

City/State/Zip: BEAUMONT, Texas 77705

Name/Title of Person Completing Form: Denham, Ronald LVN      Date: 01/31/2020

Inmate Name: KARIBLGHOSSIAN, SHANT N      Reg #: 64876-112    DOB: 09/28/1984    Sex: M

# EXHIBIT
# 4

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | KARIBLGHOSSIAN, SHANT N | | Reg #: | 64876-112 |
| Date of Birth: | 1984 | Sex: M    Race: WHITE | Facility: | SCH |
| Note Date: | 07/14/2020 08:28 | Provider:   Mace-Leibson, Ellen DO | Unit: | Z02 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

  ADMINISTRATIVE NOTE   **1**       Provider:   Mace-Leibson, Ellen DO CD
  Needs Rx renewal


**Renew Medication Orders:**

| Rx# | Medication | Order Date |
|---|---|---|
| 116132-SCH | Atorvastatin 20 MG TAB | 07/14/2020 08:28 |
| | **Prescriber Order:**   ***pill line*** Take one tablet (20 MG) by mouth every night at bedtime x 365 day(s) Pill Line Only | |
| | Indication:   Diabetes mellitus, type II (adult-onset), Hyperlipidemia, mixed | |
| 117184-SCH | glipiZIDE  5 MG TAB | 07/14/2020 08:28 |
| | **Prescriber Order:**   ***pill line*** Take one tablet (5 MG) by mouth twice daily ***note increased dose*** x 365 day(s) Pill Line Only | |
| | Indication:   Diabetes mellitus, type II (adult-onset) | |
| 116134-SCH | Lisinopril 40 MG Tab | 07/14/2020 08:28 |
| | **Prescriber Order:**   ***pill line*** Take one tablet (40 MG) by mouth each morning x 365 day(s) Pill Line Only | |
| | Indication:   Diabetes mellitus, type II (adult-onset), Essential (primary) hypertension | |
| 116435-SCH | metFORMIN  HCl 1000 MG Tab UD | 07/14/2020 08:28 |
| | **Prescriber Order:**   ***pill line*** Take one tablet (1000 MG) by mouth twice daily x 365 day(s) Pill Line Only | |
| | Indication:   Diabetes mellitus, type II (adult-onset) | |

**Other:**

  f/u labs pending


**Copay Required:** No          **Cosign Required:**  No
**Telephone/Verbal Order:**   No

Completed by Mace-Leibson, Ellen DO CD on 07/14/2020 08:29

BOP-Kariblghossian000005

# EXHIBIT
# 5

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | KARIBLGHOSSIAN, SHANT N | | | Reg #: | 64876-112 |
| Date of Birth: | ████ 1984 | Sex: M | Race: WHITE | Facility: | BML |
| Encounter Date: | 12/27/2019 07:56 | Provider: | Polavarapu, Sreedhar MD | Unit: | Z02 |

Cosign Note - Medication Reconciliation encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT  1       Provider:** Polavarapu, Sreedhar MD

**Chief Complaint:** Medication Reconciliation
**Subjective:** Rx renewal for Insulin
**Pain:** Not Applicable

**OBJECTIVE:**

**Blood Glucose:**

| Date | Time | Value (mg/dl) | Type | Regular Insulin | Provider |
|---|---|---|---|---|---|
| 12/27/2019 | 05:12 BMX | 66 | Fasting | | Yu, Lin RN |
| 12/26/2019 | 16:21 BMX | Unavailable | | | Freeman, Travis LVN |
| 12/26/2019 | 04:58 BMX | 109 | Fasting | | Denham, Ronald LVN |
| 12/25/2019 | 16:33 BMX | 167 | Fasting | | Lahaye, A. LVN |
| 12/25/2019 | 05:01 BMX | 98 | Fasting | | Denham, Ronald LVN |
| 12/24/2019 | 16:21 BMX | 157 | Fasting | | Lahaye, A. LVN |
| 12/24/2019 | 04:59 BMX | 84 | Fasting | | Denham, Ronald LVN |
| 12/23/2019 | 16:23 BMX | 170 | Fasting | | Lahaye, A. LVN |
| 12/23/2019 | 05:43 BMX | 98 | Fasting | | Yu, Lin RN |
| 12/22/2019 | 16:19 BMX | 89 | Unknown | | May, C. RN |
| 12/22/2019 | 05:12 BMX | 85 | Fasting | | Yu, Lin RN |
| 12/21/2019 | 15:52 BMX | 85 | Non-Fasting | | Freeman, Travis LVN |
| 12/21/2019 | 05:02 BMX | 114 | Fasting | | Yu, Lin RN |
| 12/20/2019 | 16:04 BMX | 184 | Non-Fasting | | Freeman, Travis LVN |
| 12/20/2019 | 05:00 BMX | 106 | Fasting | | Denham, Ronald LVN |
| 12/19/2019 | 15:35 BMX | 87 | Unknown | | May, C. RN |
| 12/19/2019 | 04:52 BMX | 66 | Fasting | | Denham, Ronald LVN |
| 12/18/2019 | 15:14 BMX | 110 | Unknown | | May, C. RN |
| 12/18/2019 | 05:19 BMX | 75 | Fasting | | Yu, Lin RN |
| 12/17/2019 | 19:38 BMX | 83 | Random | | Yu, Lin RN |
| 12/17/2019 | 19:29 BMX | 83 | Fasting | | Yu, Lin RN |
| 12/17/2019 | 04:53 BMX | 98 | Fasting | | Brekel, C. LVN |
| 12/16/2019 | 16:04 BMX | 160 | Random | | Hayes, M. LVN |
| 12/16/2019 | 05:54 BMX | 96 | Unknown | | Gunner, Selina LVN |
| 12/15/2019 | 16:08 BMX | 71 | Random | | Briggs, Robert LVN |
| 12/15/2019 | 05:22 BMX | 114 | Unknown | | Gunner, Selina LVN |
| 12/14/2019 | 16:26 BMX | 112 | Random | | Briggs, Robert LVN |

Inmate Name:   KARIBLGHOSSIAN, SHANT N
Date of Birth:   ████ 1984
Encounter Date:   12/27/2019 07:56

Sex:   M   Race:   WHITE
Provider:   Polavarapu, Sreedhar MD

Reg #:   64876-112
Facility:   BML
Unit:   Z02

| Date | Time | Value (mg/dl) | Type | Regular Insulin | Provider |
|------|------|---------------|------|-----------------|----------|
| 12/14/2019 | 05:17 BMX | 149 | Fasting | | Yu, Lin RN |
| 12/13/2019 | 16:36 BMX | 125 | Random | | Briggs, Robert LVN |
| 12/13/2019 | 04:48 BMX | Refused | | | Brekel, C. LVN |
| 12/12/2019 | 16:15 BMX | 162 | Random | | Hayes, M. LVN |
| 12/12/2019 | 04:53 BMX | Refused | | | Brekel, C. LVN |
| 12/11/2019 | 15:58 BMX | 77 | Random | | Hayes, M. LVN |
| 12/11/2019 | 05:46 BMX | 79 | Unknown | | Gunner, Selina LVN |
| 12/10/2019 | 16:37 BMX | 107 | Random | | Briggs, Robert LVN |
| 12/10/2019 | 05:29 BMX | 78 | Unknown | | Gunner, Selina LVN |
| 12/09/2019 | 16:30 BMX | 201 | Random | | Briggs, Robert LVN |
| 12/09/2019 | 04:42 BMX | Refused | | | Brekel, C. LVN |
| 12/08/2019 | 15:58 BMX | 182 | Random | | Hayes, M. LVN |
| 12/08/2019 | 05:10 BMX | Refused | | | Denham, Ronald LVN |
| 12/07/2019 | 16:11 BMX | 222 | Random | | Hayes, M. LVN |
| 12/07/2019 | 05:17 BMX | Refused | | | Brekel, C. LVN |
| 12/06/2019 | 15:47 BMX | 134 | Random | | Hayes, M. LVN |
| 12/06/2019 | 04:52 BMX | 136 | Unknown | | Thomas, J. LVN |
| 12/05/2019 | 15:41 BMX | 70 | Non-Fasting | | Haley-Gilliam, L. LVN |
| 12/05/2019 | 05:33 BMX | 112 | Unknown | | Watts, C. RN |
| 12/04/2019 | 19:09 BMX | 183 | Non-Fasting | | Haley-Gilliam, L. LVN |
| 12/04/2019 | 04:37 BMX | Refused | | | Brekel, C. LVN |
| 12/03/2019 | 16:05 BMX | 135 | Random | | Hayes, M. LVN |
| 12/03/2019 | 04:54 BMX | 140 | Fasting | | Brekel, C. LVN |
| 12/02/2019 | 15:58 BMX | 59 | Random | | Hayes, M. LVN |
| 12/02/2019 | 05:30 BMX | 70 | Unknown | | Gunner, Selina LVN |
| 12/01/2019 | 15:08 BMX | 155 | Random | | Briggs, Robert LVN |
| 12/01/2019 | 05:11 BMX | 85 | Unknown | | Gunner, Selina LVN |
| 11/30/2019 | 15:33 BMX | 211 | Random | | Briggs, Robert LVN |
| 11/30/2019 | 05:02 BMX | Refused | | | Yu, Lin RN |
| 11/29/2019 | 15:13 BMX | 190 | Random | | Briggs, Robert LVN |
| 11/29/2019 | 04:59 BMX | 97 | Fasting | | Brekel, C. LVN |
| 11/28/2019 | 14:32 BMX | 123 | Random | | Hayes, M. LVN |
| 11/28/2019 | 05:05 BMX | 99 | Fasting | | Brekel, C. LVN |
| 11/27/2019 | 16:41 BMX | 62 | Random | | Hayes, M. LVN |
| 11/27/2019 | 05:05 BMX | 128 | Unknown | | Watts, C. RN |

**ASSESSMENT:**

Diabetes mellitus, type II (adult-onset), 250.00 - Current

| | | | |
|---|---|---|---|
| Inmate Name:  KARIBLGHOSSIAN, SHANT N | | Reg #: | 64876-112 |
| Date of Birth: ████1984 | Sex:  M   Race:  WHITE | Facility: | BML |
| Encounter Date: 12/27/2019 07:56 | Provider:  Polavarapu, Sreedhar MD | Unit: | Z02 |

## PLAN:

### New Laboratory Requests:

| Details | Frequency | Due Date | Priority |
|---|---|---|---|
| Lab Tests - Short List-General-CBC w/diff | Recurring | 01/08/2020 00:00 | Routine |
| Lab Tests - Short List-General-Lipid Profile | | | |
| Lab Tests - Short List-General-Microalbumin, urine random | | | |
| Lab Tests - Short List-General-TSH | | | |
| Chronic Care Clinics-Diabetic-Hemoglobin A1C | | | |
| Lab Tests - Short List-General-T4, Free | | | |
| Lab Tests - Short List-General-Comprehensive Metabolic Profile (CMP) | | | |

    **Additional Information:**

       e11.9

       MUST BE DONE...

| | | | |
|---|---|---|---|
| Chronic Care Clinics-Diabetic-Hemoglobin A1C | Recurring | 04/08/2020 00:00 | Routine |

    **Additional Information:**

       e11.9

| | | | |
|---|---|---|---|
| Chronic Care Clinics-Diabetic-Hemoglobin A1C | Recurring | 07/08/2020 00:00 | Routine |

    **Additional Information:**

       e11.9

| | | | |
|---|---|---|---|
| Chronic Care Clinics-Diabetic-Hemoglobin A1C | Recurring | 10/08/2020 00:00 | Routine |

    **Additional Information:**

       e11.9

### Schedule:

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Counseling | 01/01/2020 00:00 | Nurse |

    Inmate's last labs were in 2017: must NOT refuse, if he wants to continue Medical Tx w meds.

| | | |
|---|---|---|
| Counseling | 01/08/2020 00:00 | Nurse |

    Inmate's last labs were in 2017: must NOT refuse, if he wants to continue Medical Tx w meds.

| | | |
|---|---|---|
| Counseling | 01/15/2020 00:00 | Nurse |

    Inmate's last labs were in 2017: must NOT refuse, if he wants to continue Medical Tx w meds.

| | | |
|---|---|---|
| Chronic Care Visit | 06/25/2020 00:00 | Physician |

    CCC: last seen, 6/26/19...do NOT move ahead.

### Disposition:

Follow-up at Sick Call as Needed

Follow-up at Chronic Care Clinic as Needed

### Other:

Inmate MUST DO LABS, in order to be treated properly w right meds.

### Patient Education Topics:

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 12/27/2019 | Counseling | Compliance - Treatment | Polavarapu, Sreedhar | No Participation |

**Copay Required:** No          **Cosign Required:**  No

**Telephone/Verbal Order:**   No

Completed by Polavarapu, Sreedhar MD on 12/27/2019 08:05

**Bureau of Prisons**
**Health Services**
**Clinical Encounter - Administrative Note**

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | KARIBLGHOSSIAN, SHANT N | | | Reg #: | 64876-112 |
| Date of Birth: | ████ 1984 | Sex: | M    Race: WHITE | Facility: | BML |
| Note Date: | 12/26/2019 21:06 | Provider: | Yu, Lin RN | Unit: | Z02 |

Admin Note - Chart Review encounter performed at Health Services.

**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**          **Provider:**  Yu, Lin RN

Insulin order expired 12/24/2019. Please review chart to see if needed to renew order

**Copay Required:** No          **Cosign Required:**  Yes

**Telephone/Verbal Order:**   No

Completed by Yu, Lin RN on 12/26/2019 21:08

Requested to be cosigned by  Polavarapu, Sreedhar MD.

Cosign documentation will be displayed on the following page.

# EXHIBIT
# 6

KARIBLGHOSSIAN, Shant
Reg. No. 64876-112
Unit 1A
Request to Staff Response
Page 1 of 2

RESPONSE

This is in response to your Request to Staff received on
May 18, 2020, in which you request Compassionate Release in
accordance with the First Step Act. You further state, you are
diabetic, and have high blood pressure, high cholesterol,
proliferative retinopathy and peripheral neuropathy.

Program Statement 5050.50, "Compassionate Release/Reduction in
Sentence (RIS): Procedures for Implementation of 18 U.S.C.
4205(g) or 3582(c)(1)(A)" Section 3, requests based on Medical
Circumstances, specifies: A Compassionate Release/RIS request may
be initiated for inmates with a terminal, incurable disease and
whose life expectancy is eighteen (18 months) or less, and/or has
a disease or condition with an end-of life trajectory under 18
U.S.C. 3582(d)(1). A Compassionate Release/RIS request may also
be initiated for inmates who have a debilitated medical
condition. More specifically, these inmates would be diagnosed
with an incurable, progressive illness, or who have suffered a
debilitating injury, from which they will not recover. Elderly
inmates, age 65 and over, with medical conditions, may also
initiate a Compassionate Release/RIS. Your request has been
evaluated consistent with this general guidance.

In your case, your medical history does not meet the criteria as
stated above, regarding a Compassionate Release/Reduction in
Sentence (RIS) for inmates with a debilitating medical condition.
You are currently able to independently adapt to activities of
daily living and are able to perform self-maintenance activities
in a correctional environment.

The BOP is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates. We recognize you, like
all of us, have legitimate concerns and fears about the spread
and effects of the virus. Your concern, however, regarding being
potentially exposed to, or possibly contracting, COVID-19 does
not currently warrant an early release from your sentence. It
should also be noted, at this time, FCI Schuylkill does not have
any confirmed COVID-19 staff or inmate cases. In view of the fact
there are not any confirmed staff or inmate cases of COVID-19, at
the present time, the conditions of your release present a
significantly higher risk of contracting COVID-19 than your
current confinement at FCI Schuylkill. Additionally, your
intended release residence is located in an area which has a

Continuation Page 2 of 2
KARIBLGHOSSIAN, Shant
Reg. No. 64876-112

significant level of COVID-19 infection as per CDC statistics.

Accordingly, after careful consideration, your Compassionate
Release/RIS request is denied at this time.

If you are not satisfied with this response to your request, you
may commence an appeal of this decision via the administrative
remedy process by submitting your concerns on the appropriate
form (BP-9) within 20 days of the receipt of this response.

Scott Finley, Warden

Date 06/12/20

# EXHIBIT
# 7





**CareMore**

Believe It.

August 17, 2020

REG: Shant Kariblghossian
DOB: 09/28/1984

To whom it my concern:

This is a request to release the above mentioned patient from prison early due to the Covid Pandemic. The patient has multiple co morbidities that makes him at high risk of contracting this disease in prison and having a poor outcome. I have been the above mentioned patient doctor for years and will continue to be his primary care physician in the future.

Sincerely,

M.W. Coats M.D
Family Practice

Melvin Coats, M.D.
9209 Colima Rd
Suite 2000-B
Whittier, CA 90605
562-236-2290

# EXHIBIT

# 8

## Background

The goal of Mr. Kariblghossian's release plan is to provide resources that support his reintegration into the community after being incarcerated since 2014. Mr. Kariblghossian has a history of type II diabetes mellitus and hypertension. Having just one of the diagnoses above increases the risk of severe illness and death if Mr. Kariblghossian were to contract COVID 19. Mr. Kariblghossian would reside with his brother, Mano Boghossian. His support and care will be provided to him by Mr. Boghossian.

De Anna Dove, ASW with the Federal Public Defender's Office, developed the following release plan by interviewing Mr. Kariblghossian's family. Below, please find the outline detailing the housing, medical care and prosocial supports planned for Mr. Kariblghossian supporting his re-entry into his community

| | |
|---|---|
| **RESIDENTIAL TREATMENT** | Upon his release, Mr. Kariblghossian will be admitted into a residential treatment facility that will provide dual diagnosis care. Dual diagnosis recovery will help Mr. Kariblghossian achieve mental wellness in conjunction with treating his addiction to maintain lasting sobriety. Mr. Kariblghossian suffers from Depression, Obsessive-Compulsive Disorder, and Anxiety. De Anna Dove, ASW is currently researching treatment centers to locate availability. |
| **HOUSING**<br><br>█████████<br>Bellflower, CA 90706 | Upon completing residential treatment, Mr. Kariblghossian will live with his brother, Mano Boghossian, at ████████, Bellflower, CA 90706. Mr. Boghossian advises that his apartment consists of two bedrooms, a loft, and one bathroom allowing room for Mr. Kariblghossian. Mr. Boghossian stated that he will be available to care for and transport Mr. Kariblghossian to his medical and mental health appointments and other errands. |

| | |
|---|---|
| **MEDICAL CARE**<br><br>**Long Beach Memorial Medical Center**<br><br>2801 Atlantic Avenue<br>Long Beach, CA 90806 | Mr. Kariblghossian will receive medical health care at the Long Beach Memorial Medical Center's campus. The medical center is located eight miles from the Boghossian home. Because Mr. Kariblghossian has type II diabetes and hypertension, he will need specialty care. Long Beach Memorial Medical Center has an array of specialists to address each of his illnesses. |
| **Bellflower Behavioral Health Hospital**<br><br>9542 Artesia Blvd.<br>Bellflower, CA 90706 | Due to Mr. Kariblghossian having Depression, Obsessive-Compulsive Disorder, and Anxiety, Bellflower Behavioral Health Hospital is located one mile away from the Boghossian home. Bellflower Behavioral Health Hospital provides inpatient treatment, follow-up care and can refer Mr. Kariblghossian to a mental health care provider for ongoing treatment if needed. |
| **PROSOCIAL ENGAGEMENT** | De Anna Dove will assist Mr. Kariblghossian with applying for the SSDI, General Relief, Calfresh, and Medi-Cal benefits. These benefits will cover Mr. Kariblghossian's need for financial assistance, food, and medical insurance. General Relief will serve as an interim benefit until Mr. Kariblghossian's social security disability benefit is reinstated. |
| **The Office of the Federal Defender - Central District of California**<br><br>321 East 2nd Street<br>Los Angeles, CA 90012<br>213.894.7527<br><br>*Contact:*<br>*De_Anna_Dove@fd.org* | • Service Coordination Services<br>• Case Management Services<br>• Record Collection<br>• Re-entry Support |

# EXHIBIT
# 9

Honorable Judge Snyder,

**This letter is intended to serve as my ultimate plea for the release of my dear cousin, Shant Kariblghossian.** For many years, my family and I have lived in absolute anguish and heartache as my cousin not only suffers physically from multiple diagnosed health conditions, but emotionally from deep remorse and despair. Despite the many years I have been physically separated from my sweet cousin, I am hopeful this letter can provide aid and support in his release, in which after many years, he can finally be reunited with our family.

**Shant was always so loving, kind, and protective of me. Biology made us cousins, but we had a very sacred and special bond, much like brother and sister.** Shant was always two academic grades above me, but throughout the entire duration of our academic career, he always kept me close. Shant always encouraged me to be strong and to speak out against all teenage injustices: despite how big or small. Shant was a natural athlete: he had an innate drive and passion for the game of basketball, and he excelled. He starred on the Varsity basketball team in high school and was truly disciplined in his aims to advance his game in his sport. He was a team player, focused, ambitious, and he was determined to succeed. I imagine if the stars had aligned much differently for him, he could have quite possibly starred in the NBA.

**It has been brought to my attention from recent family discussions that my cousin's health is severely deteriorating from the lack of proper medical care, specifically the proper treatment plan and medical attention.** As a pharmacist second, I have extensive schooling and knowledge that the lack of proper prescription medications needed to treat these comorbid diagnosed conditions is highly detrimental to his overall health. My cousin is deemed a severe, high-risk patient for blindness, stroke, and a multitude of cardiovascular conditions.

**Please return my cousin to our family so he can receive the medical attention he desperately needs in order to return and become a high-functioning and active member of his community.** The time is now to act in favor for his release, and I plea this letter will reflect the urgency of his deteriorating health and that my cousin has a genuine and loving support system waiting for his safe return home. And I can promise you that we will support and navigate Shant onto the right path.

My sincerest gratitude and forever thanks for your time and attention,

Angelik Karapetian, RPh

 **Gmail**           **GAMERZ54 Agassi <bearish54@gmail.com>**

## Re: Shant Kariblghossian Early Release Letter

**angiechouljian@yahoo.com** <angiechouljian@yahoo.com>      Thu, Aug 13, 2020 at 12:08 AM
To: Mano <bearish54@gmail.com>

Honorable Judge Christina Snyder,

   My name is Angie Chouljian and I am writing this letter in reference to inmate number 64876-112, Shant Kariblghossian. Shant Kariblghossian is my first cousin. His mother was like a mother to me and he a little brother. Growing up, I spent almost every weekend at there house. It's safe to say I saw Shant Kariblghossian grow up.

   As a child Shant Kariblghossian was a very kind hearted, funny, affectionate, family oriented, people pleasing sweetheart. Unfortunately tragedy struck our family as his mother fell ill to cancer during the most crucial time of a child's life. Shant Kariblghossian was extremely close to his mother. He took her illness very badly, as any child would. After cancer took his mother's life Shant Kariblghossian, without his mother's guidance, fell in with the wrong crowd. This caused him to make the mistakes that find him where he is now. There isn't a day that goes by that Shant nor I think about what life would be like if he had the stern loving mother figure which was my aunt to guide him in the right path.

   Our family is suffering due to Shant Kariblghossian's incarceration. His deteriorating health has us all worried. He has type 1 diabetes, retinopathy, neuropathy, high blood pressure, cholesterol and hepatitis C. Honorable Judge Snyder, I kindly ask you consider inmate number 64876-112, Shant Kariblghossian for an early release.

Thank you,
Angie Chouljian

Sent from my iPhone

August 17, 2020


Honorable Judge Snyder,


I am writing this letter in hopes that it will help to see what kind of person Shant Kariblghossian (Inmate #64876-112) is, despite his given circumstances and the actions taken leading up to this point.


**I have known Shant as a good friend for over 10 years, I have always know Shant to be kind hearted, caring and most importantly dependable.** During this time, I have come to see various sides his personality, Shant is the type of person who would drop whatever he was doing to help anyone.


**I can assure Shant has matured and highly reflected on his previous actions during his incarceration, I believe Shant will move forward and become the best version of himself.** He has plenty of support from fiends and family who will continue to motivate and push him through any hardships he may face. I am aware his health condition is not the best and he will have better care amongst his family who loves him unconditionally.


**Please consider Shant's early release, as I can guarantee he is remorseful and will become a better son, brother, uncle and friend!**


If you have any questions do not hesitate to reach me at carloscmjrsocial@gmail.com.




Warm regards,


Carlos Ceron

August 17, 2020

Honorable Judge Cristina Snyder

United States District Judge

Central District of California

350 W. First Street.

Los Angeles, CA 90012

Dear Honorable Judge Snyder:

My name is Caroline Garabedian and I work for the Lanterman Regional Center serving persons of developmental disabilities.   Holding a  graduate degree in forensic psychology, I have advocated for many years for our clients that have been involved with the criminal justice system presenting diversion plans to judges and ensuring their success in the community.

Today, I would like to advocate for Shant whose family I have known for over 33 years. Shant's sister Virginia Tashdjian and I have been best friends since we were 10 years old. I have grown up around Shant and his siblings who have been a very close-knit, loving, kind, and respectable family.  Shant, who I know as my best friend's younger brother has always been a good-hearted, trusting, and generous person.  He would enjoy spending time with us by engaging in innocent activities such as going to bookstores, restaurants, and music stores.

Woefully, tragedy struck my best friend when the matriarch of their family, their mother was diagnosed with cancer and passed away within a couple years of diagnosis. Regretfully,  as a young adolescent, Shant was unable to deal with such a significant and tragic loss and turned to drugs to deal with the resulting unbearable pain and sorrow. While he may have made some harmful choices, Shant is person that grew up with very facile and ethical morals and upbringing.  The dire decisions he has made do not define Shan't true self and personality.

I respectfully ask for your grace and mercy in allowing Shant an early release from an almost full term served especially considering the many health conditions he has including diabetes, hypertension, high cholesterol, eye, and renal disease.  Please allow him to come home and reunite with his family and get both the proper medical and psychological care

that he needs, especially considering the Covid-19 virus that is a major threat in the prison system to someone of underlying health conditions.  I thank you in advance for your attention and kind consideration for a good-hearted, benevolent, and compassionate person who is in need of a second chance.

Sincerely,


Caroline Garabedian

August 12, 2020

Honarable Judge Cristina Snyder
United States District Judge
Central District of California
350 W. First Street
Los Angeles, CA 90012

RE: Inmate 64876-112

Dear Judge Snyder,

Please accept this letter of support for my first cousin Shant Kariblghossian.

It is my hope that this letter will shed light on how much love our family has for Shant and how we feel it's imperative during this unprecedented pandemic that he is released early.

After serving the majority of his 10-year sentence for non-violent offenses, we are gravely concerned that Shant's pre-existing medical conditions can be deadly if he contracts the coronavirus in the close confines of prison.

Difficulties in Shant's life began as his loving mother began to battle a long and painful fight against colon cancer. The loss of his mother at the height of his adolescence was extremely unbearable for this sensitive soul, and his inability to deal with the tragedy led to some choices he undoubtedly now regrets.

Shant has been serving a harsh sentence behind bars. His decisions early in life derailed his chance to enjoy his youth, pursue higher education, start a career, become a productive citizen, and build a family of his own. Shant now realizes how those bad decisions have affected him, his siblings and his extended family.

Shant has a lot of love to share, a lot to contribute to his family and his community, and he still has a chance to pursue his passions and succeed in his chosen career working with his brother in the family auto repair business. As you may read from his doctors and other family members, Shant is struggling with type 1 diabetes and also suffers from high blood pressure and high cholesterol. He has also battled depression, suffers from kidney and eye diseases, and he has damaged nerves in his hands and arms.

We hope that by releasing him early, you will give Shant a chance to stay safe during this pandemic and give him a fighting chance to create a life for himself in a future that can still be salvaged.

We are certain that he will be willing to share the lessons he has learned about drugs and crime through mentorship and counseling groups. This is how Shant is, always willing to give a shirt off his back and willing to do whatever he can to help others.

We need your help so that we can allow him another shot at life and a chance to help his community and society.

Thank you for your consideration.

Sincerely,

Christopher Guldalian

| | |
|---|---|
| **From:** | GAMERZ |
| **To:** | Brittany Klein |
| **Subject:** | Fwd: August 24, 2020 |
| **Date:** | Tuesday, August 25, 2020 7:24:23 AM |

August 24, 2020

Honorable Judge Cristina Snyder

United States District Judge

Central District of California

350 W. First Street

Los Angeles, CA 90012

RE: Inmate 64876-112

Dear Judge Snyder,

I am writing in regard to Shant Kariblghossian. I have known Shants brother since early childhood. I am well acquainted with his family as well. I can assure you that Shant has a strong stable network of people waiting to help him when he comes home from prison. He has neighbors who would welcome his presence. He has family who very much want him to be with them.Shants health is deteriorating as he has serious health issues which include diabetes and high blood pressure. His family would like to help Shant become healthy again.

Shant unfortunately got involved in drugs, but like all of us he has changed a lot in those 8 years while serving his time in prison. He has Worked hard at his own rehabilitation and he has been a model prisoner. He has a family and a circle of support that will help him be successful and healthy when he comes home. Please do all you can to ensure that Shant has an early release.

Sincerely,

Liza Samuelian




Sent from my iPhone
--
Mano

August 18, 2020

Honorable Judge Cristina Snyder
United States District Judge
Central District of California
350 W. First Street
Los Angeles, CA 90012

RE:  Inmate 64876-112

Dear Judge Snyder,

Please accept this letter of support for Shant Kariblghossian,

My name is Garo Arshagouni and I am a very close family friend to the entire Kariblghossian family.  I have known the family for over 30 years, when his brother Mano and I became friends through school.  I met Shant shortly thereafter, as I spent many school days, weekends, and summers at their house. I was fortunate enough to watch Shant grow up and he was one of the kindest, warm-hearted, and thoughtful human beings I've met.  He always wanted to hang out with his older brother and I. He'd often play ping-pong, basketball, swim, and watch sports with us.

Unfortunately, when Shant was 16 years old, his mother passed away from cancer.  The loving home she created was never the same for their family. Her loss could be felt by everyone that knew them and the pain was simply too unbearable for Shant. Sadly, he turned to drugs to numb the pain.

Throughout the years, Shant has always been on my mind and in my heart. Regrettably, Shant's health has made a turn for the worse. While incarcerated he has developed many illnesses and I am deeply concerned about his wellbeing during these uncertain times.

Judge Snyder, I hope you can find it in your heart to grant an early release to Shant so that he can be under the care of his loving family and get proper medical attention.

Thank you for your time and consideration.

Sincerely,

Garo Arshagouni

Honorable Judge Snyder,


It is with heavy heart that I write this letter pleading for the release of Shant Kariblghossian (Inmate #64876-112).

**Shant Kariblghossian is my older cousin, but he has always been much more than that to me, he has always been my big brother.** Even during his time away, Shant continues to be someone I can lean on and look to for advice. Through several letters and phone conversations, it is evident to me how much he has grown and matured as a person. I have no doubt in his ability to become an outstanding citizen again.

**Shant is actually one of the first people I told, via letter, that I was proposing to my girlfriend.** If you could read his response, you would think he himself was getting engaged. He could not have been happier. I let him know that I was planning on having him a part of my wedding party if his release allows it.

**Unfortunately, one thing that keeps getting exponentially worse for Shant is his health.** He has 7 major health conditions that are affecting him in ways that I cannot fathom. Whether it is his diabetes, depression, neuropathy, or any of the other conditions he suffers from, I feel like Shants health is wearing down fast. Without the proper treatment I worry how much longer he will last in there.

**Please Judge Snyder, consider Shant Kariblghossian for early release.** He is not someone who deserves to continue his time in federal prison. He is someone that needs to rejoin his big Armenian family and celebrate all the positive things life has in store for someone with as pure a heart as his.


Respectfully,

Harout Achekian

To Whom It May Concern:

RE: SHANT KARIBLGHOSSIAN

INMATE NUMBER 64876-112

My name is Harout Messrelian and I am a practicing attorney here in California. This letter is in regard to my first cousin, Shant Kariblghossian, Inmate Number 64876-112. I am actually getting emotional in writing this letter because Shant was the brother I never had. We are 9 months apart in age and I literally grew up with him. My fondest memories from childhood, adolescence, and even as a teenager have Shant's fingerprints all over them. I still vividly remember all the time we spent swimming, playing basketball and ping pong, and just enjoying our teenage years together. I would often sleep over at Shant's house during the Summer as his home was a second home to me. I will never forget those memories as they are etched in my brain forever.

Shant is a kind soul and was always an absolute pleasure to be around. He had an amazing sense of humor and was always willing to help people in need. Everyone in the family used to think I was the nice guy, but I would constantly remind them that Shant had a bigger heart – a heart of gold.

Unfortunately, Shant's mother (my aunt), passed away from cancer when Shant was 16 years old and still in high school. Her death shook all of us and completely changed our lives. We also lost our grandparents thereafter in a matter of just a few years. Our grandparents used to live just minutes away from Shant's family home and their passing jolted the foundation of our family. We were a very close-knit family and these deaths were the first real tragedies our family had faced. Shant did not know how to deal with the passing of his mother and other loved ones. He turned to drugs and started hanging out with the wrong crowd to try to bury his sorrows and cope with the immeasurable pain of losing a parent at a young age. His drug use and drug dependency ended up getting Shant in trouble with the law and he was eventually incarcerated on this present case for the better part of the last decade. Although Shant committed mistakes that resulted in him being incarcerated, Shant is not a violent offender and is not a bad human being – he was just a young kid that lost his way and was never able to make it back on the correct path.

Over the past 8 years, my family and I have incessantly worried about Shant's health due to his underlying health conditions. I am personally aware of several health conditions, including hypertension and diabetes, that worried us even in the absence of covid-19. In this pandemic era, those worries have greatly intensified, and we just want Shant to be safe and get the proper medical carep. We have lost out on the pleasure of seeing him and being around him for the past 8 years and we want him to be safe.

Thank you kindly for taking the time to read this letter.

Sincerely,

Harout Messrelian

August 14, 2020

Re:   Inmate number 64876-112
      Shant Kariblghossian

Dear Honorary Judge Christina Snyder:

I am writing this letter regarding my first cousin, Shant Kariblghossian, my maternal aunt's son. We come from a very big family and Shant is one of twelve first cousins. We are an extremely close family and we all grew up with one another. We share so many amazing memories with each another, spent all of our birthdays together and had countless family gatherings. Shant has always been a very thoughtful, caring, and generous individual with a heart of gold, an excitement for life, a sense of humor, and true love for his family. The unanticipated sickness and death of our aunt, Shant's mom, at such a young age, took a toll on the entire family, especially on Shant, who was only a teenager at the time. Shant's absence from our family has been so very noticeable throughout the years and we are all anxiously waiting for his release. Shant has a strong, stable network of people waiting to help him when he comes home.  Shant is an asset to his family and to his community. When he transitions back into society, he will be in great company with his supportive family who will be there to help him start a new life.

Sincerely,

Maralle Messrelian

 **Gmail**

GAMERZ54 Agassi <bearish54@gmail.com>

---

## Shant Kariblghossian Letter

**Marty Kasbarian** <Marty@bestbuytirepros.com>
To: bearish54@gmail.com

Thu, Aug 13, 2020 at 12:23 AM

Dear Judge Snyder,

I hope you and your family are doing well and are safe during these extremely difficult and challenging times in our lives. My name is Marty Kasbarian, and I am writing to you in regards to our loving and extremely kind hearted cousin, Shant Kariblghossian. I am Shants 1st cousin. My dad and his mother were siblings. Growing up Shant and I we were extremely close. Even though he has an older brother and sister, I was closer in age with Shant , so he looked up to me as an older brother. He would come to me with problems he wouldn't feel comfortable addressing with his older siblings and ask me for guidance. I would spend the entire summer with them. Swimming , teaching him the game of basketball , playing tennis , and watching sporting events was just a few things that kept us busy along with my aunts (Shants moms) cooking and hospitality.

Shant and his family were extremely unfortunate in losing there mother at such a young age. She was the backbone of the entire family and kept everyone in check. She made sure Shant had everything he wanted in life and more. She was an unbelievable aunt to me and an incredible mother and role model for Shant. When she passed, Shant was only 16, and took it harder than anyone else . He was the only one at home all day with her while the rest of the family would work and try to support the family. The backbone of the family passing, caused a lot of stress and my cousin wasn't the same. It became harder and harder to get him to express his feelings towards me and the rest of his family.

We are an extremely tight family and have looked out for one another since we were born. Shants mother was one of 5 siblings , in which there are 10 first cousins along with our own families and children.. We will take a bullet if we had to for each other and I know Shant would do the same for all of us if he had too! We have lost our chance to catch up with him over the past several years due to the fact that he has been locked up, and now with a virus out there, it would be very hard for us to lose another family member given the underlying conditions he has. Shant is a great man, kind hearted person, and always put everyone else's feelings and emotions before his. And i truly hope the right decision is made to help us reunite with Shant and keep him SAFE at home with his family!

Thank you for your time Judge Snyder,

Marty Kasbarian

Dear Judge Snyder,

I write this letter to you on behalf of Shant Kariblghossian, Inmate #64876-112.

**This is a letter is not an easy one to write, but please find it in your heart to let our Shant come back home to a family that has been eagerly waiting for him.** I have been fortunate enough to know Shant from the day he was born, as I was alongside his mother during his birth. From that day on, Shant has held a special place in my heart.

**As a mother myself of two children who grew up alongside Shant, I have nothing shy of immense empathy towards my sweet nephew.** I have been fortunate enough to speak to him on several occasions during his incarceration and he someone has still managed to keep up his sense of humor and this charm that makes him so special.

**Unfortunately, the devastating and tragic passing of his dear mother from her battle with colon cancer affected the emotional well-being of Shant.** The youngest of three siblings, he was so close with his mother, and the ramifications of her death were detrimental to his well-being.

**There are few people I have come across with as pure a heart and as genuine of a soul as Shant Kariblghossian.** In that, he reminds me entirely of his late mother. Both have this selfless and sincerity that would be evident within 5 minutes of talking to them.

**Shant has never been the type to complain, but his several health conditions are beginning to really take a toll on him physically and mentally.** His spirits are still high, but as well as I know him, I am not sure how much longer this would last. have spoke to Shant on several occasion during his incarceration and, though his spirit is still high, his health and quickly deteriorating. Please consider the early release of Shant Kariblghossian so he can properly tend to these conditions.

My Sincerest Gratitude,

Nanor Achekian

| | |
|---|---|
| **From:** | Mano |
| **To:** | Brittany Klein |
| **Subject:** | Letters for Shant |
| **Date:** | Friday, August 14, 2020 8:03:54 AM |

Good morning !

Sent from my iPhone

Begin forwarded message:

> **From:** sandie guldalian <sandieg777@gmail.com>
> **Date:** August 14, 2020 at 7:52:42 AM PDT
> **To:** Mano Boghossian <BEARISH54@GMAIL.COM>
> **Subject: Shant Kariblghossian**
>
>
> Re: Shant Kariblghossian
> Inmate number 64876-112
>
> Dear Honorable Judge Snyder,
>
> My name is Sandie Guldalian, I am Shants older cousin.  I am writing on Shants behalf because we need our cousin back home with us.
>
> Unfortunately, when my aunt passed away (Shants Mother) when Shant was only 16, he did not know how to handle it.  He surrounded himself with the wrong crowd and got caught up with trouble.  He really is a gentle sweet guy!  The kindest heart!  My family and I desperately want him home where he belongs.  Especially with all his underlying health issues.  He belongs home with us.  We miss him so much!!
>
> Please, kindly consider an early release for our beloved cousin.  We are a tightknit loving family, and we are looking forward to having Shant back with us, so he can heal and mend with his family by his side and so he will be able to get the correct healthcare he deserves.  Thank you in advance for considering my pleading letter for his release.
>
> Kind Regards,

August 14, 2020

The Honorable Christina A. Snyder
First Street Courthouse
350 West First Street
Courtroom 8D, 8th Floor
Los Angeles, CA 90012


Dear Judge Christina A. Snyder,


I am writing to you today to advocate for the early release of my cousin,
Shant Karibighossian (64876-112).  As of right now he is battling many health
issues and is a non-violent offender in need of medical attention. Shant's
current incarceration does not represent who he is as a person and I am
certain that with our family's help he can become the person he has always
been. Growing up with a large extended family I was constantly surrounded
by my older cousins, Shant being one of them. Shant's jovial demeanor made
him stand out, but I always noticed how truly kind hearted he is. Shant truly is
a great person, that said, several unfortunate events swept him down a dark
road that, as a family, we know we can guide him back from. During his
formative teenager years, Shant lost his mother when he needed her
guidance the most. In addition to the grief of his untimely loss, Shant also
bore witness to the toll the treatments took on his mother's body. Shant, at
his core, is still the same jokester I remember and with his health
complications he needs to be with his family to insure any chance of
recovery; not limited to his medical conditions but also to him as a whole
human being.

I very much appreciate you taking the time to read this letter and hope you
take my words into consideration in your decision.


Sincerely,

Sevag Kasbarian

| | |
|---|---|
| **From:** | GAMERZ |
| **To:** | Brittany Klein |
| **Subject:** | Fwd: letters for Shant |
| **Date:** | Friday, August 14, 2020 9:51:42 AM |

Hello Brittany!

---------- Forwarded message ---------
From: **sandie guldalian** <sandieg777@gmail.com>
Date: Fri, Aug 14, 2020 at 8:24 AM
Subject: Shant Kariblghossian
To: Mano Boghossian <Bearish54@gmail.com>

RE: Shant Kariblghossian
Inmate Number: 64876-112

Dear Honorable Judge Snyder,

I am writing this letter to you to ask for my nephews release.  I continuously inquire about him through his brother Mano.  I worry about him so mucht, he needs to come back home with his loving family.  His mother passing when Shant was 16 years old, took a toll on my nephew.  He did not know how to handle being without a mother at such an impressionable age.  Please allow me to mother him, he needs to be back in a stable household with his family looking after him.  He needs home-cooked meals and family bonding time so he is able to heal and get back to normal.

Shant has some health issues as well that needs attention, Judge Snyder, please allow Shants release so he is able to get the right healthcare for his medical needs.  My sister and I are anxiously waiting for his return home so we can bond and reconnect! My heart breaks thinking about Shant alone and so far away.  Please allow him back home with us.

Thank you kindly,

Sossy Messrelian


--
Mano

| | |
|---|---|
| **From:** | Mano |
| **To:** | Brittany Klein |
| **Subject:** | Letters for Shant |
| **Date:** | Friday, August 14, 2020 10:05:51 PM |

---

**EXTERNAL SENDER:** Do not click any links or open any attachments unless you trust the sender and know the content is safe.

Sent from my iPhone

Begin forwarded message:

> **From:** Troy Kasbarian <ttkinc@hotmail.com>
> **Date:** August 14, 2020 at 9:04:30 PM PDT
> **To:** "bearish54@gmail.com" <bearish54@gmail.com>
> **Subject: Shant Letter - Tro**
>
>
> Dear Judge Snyder, I am one of many cousins of Shant Kariblghossian inmate # 64876-112. The purpose of this letter is to show the love and support we have for Shant. Growing up, we spent tons of time together playing basketball. He would always show me new moves and encourage me to play with the older crowd to get better. In short, he took me under his wing and looked out for me like an older brother. His mom's passing at a young age was difficult for us all as our moms were like best friends. This was especially difficult for Shant, regardless of how much he tried to hide his emotions. As a family unit, we will support him any which way possible. A lot of our family members have their own businesses and would love to give Shant a job once he is out of prison. His health is deteriorating so we are hoping and praying this will be sometime soon. Thank you for your time.
>
>
> Tro Kasbarian
>
>
>
> Troy Kasbarian

August 13, 2020

Re: Inmate # 64876-112

Shant Kariblghossian

Honorary Judge Christina Snyder,

I write to you regarding my first cousin, Shant.  Shant is my paternal aunt's son.  We come from an Armenian family and we have always learned from childhood to value and cherish family bonds and ethics.  My father had 4 siblings and we are a total of 12 first cousins.  We share many amazing memories together as we always spent birthdays, holidays and family gatherings together.  Shant was one of those rare individuals who was shy and quiet but had a heart of gold.  He knew how to make us laugh and I cherish the times we have spent together.  Unfortunately his mom's early death was a hard blow for him to handle as was very difficult for the entire family.  My aunt was the backbone to her family and her absence was truly difficult for the family to cope with, especially for Shant who was barely a teenager at the time and already going through a difficult stage in any normal individual's life.  Shant's absence from the family has been tough for all of us cousins and we anxiously await his release from prison to bond with him again and show him that he has a family who has always been there for him and will guide him in the right direction.  He will need us more than ever and he can rely on the fact that our family values have never changed and we will always be his support system.

With much appreciation,

Vana Boyajian