O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No.  2:13-cr-00318-CAS-1 |
|---|---|---|
| Plaintiff, | ) ) | **ORDER REGARDING MOTION FOR** |
| v. | ) ) | **COMPASSIONATE RELEASE** |
|  | ) | **UNDER 18 U.S.C. § 3582(c)(1)(A)** |
| SHANT KARIBLGHOSSIAN, | ) ) |  |
| Defendant. | ) ) ) |  |

## I. INTRODUCTION & BACKGROUND

On May 7, 2013, a grand jury indicted defendant Shant Kariblghossian ("Kariblghossian"), alleging two counts of knowingly and intentionally distributing at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii). Dkt. 1.  On June 1, 2014, Kariblghossian pleaded guilty to both counts.  Dkt. 25.  On February 10, 2015, this Court sentenced Kariblghossian to 120 months in prison, followed by a five-year term of supervised release.  Dkt. 40.

On September 21, 2020, Kariblghossian filed the instant motion seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 45 ("Mot."). The

government filed an opposition on October 23, 2020. Dkt. 48 ("Opp'n"). Kariblghossian filed a reply on November 9, 2020, dkt. 49 ("Reply"), and a further supplement to his motion on March 25, 2021. Dkt. 55 ("Supp.").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (internal alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018, Congress enacted—and the President signed into law—the First Step Act of 2018 ("the FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires

defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if 'extraordinary and compelling reasons warrant such a reduction' and 'such reduction is consistent with applicable policy statements issued by the Sentencing Commission.' Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

## III. DISCUSSION

### A. Exhaustion of Legal Remedies

The Court "may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) 'after he has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion' on his behalf or (2) after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Cooper, No. 2:14-cr-00228-JAD-CWH, 2020 WL 2064066, at *2 (D. Nev. Apr. 29, 2020) (internal alterations omitted) (citing 18 U.S.C. § 3582(c)(1)(A)). In addition, "[e]xhaustion occurs when the BOP denies a defendant's application[.]" United States v. Mondaca, No. 89-cr-00655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal citation omitted).

Here, Kariblghossian contends that he has exhausted his administrative remedies because his request for compassionate release was denied by his warden at Federal Correctional Institution Schuylkill ("FCI Schuylkill")[1] on June 12, 2020, and more than 30 days have lapsed since the warden denied the request. See Mot. at 1, 8; see also id. Ex. 6 (warden's June 12, 2020 letter denying Kariblghossian's request for compassionate release). The government concedes that the warden "denied [Kariblghossian's] request

---

[1] The Court notes that at the time Kariblghossian filed his reply, at least five inmates and three staff members at FCI Schuylkill had tested positive for COVID-19. See Reply at 6.

-3-

[for compassionate release] on June 12, 2020." Opp'n at 2. Accordingly, the Court finds that Kariblghossian has satisfied the exhaustion requirement.

### B. Extraordinary and Compelling Reasons Warrant Compassionate Release

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." Rodriguez, 424 F. Supp. 3d at 681 (citing 18 U.S.C. § 3582(c)(1)(A)). A number of district courts have determined that "extraordinary and compelling" reasons for compassionate release exist "when the prisoner suffers from preexisting health conditions that might make a COVID-19 infection more lethal." United States v. O'Neil, No. 3:11-cr-00017, 2020 WL 2892236, at *6 (S.D. Iowa June 2, 2020).

Here, Kariblghossian contends that his chronic medical conditions, in combination with the ongoing COVID-19 pandemic, create "extraordinary and compelling" reasons that he should be granted compassionate release. See Mot. at 9–12. The government concedes that Kariblghossian's "serious, chronic health condition" potentially qualifies as an extraordinary and compelling reason warranting compassionate release "in light of the risk of infection of COVID-19." See Opp'n at 12. For example, Kariblghossian suffers from type 2 diabetes, obesity, hypertension, retinopathy, hepatitis C, obsessive compulsive disorder, and anxiety. Mot. at 2–3; id. Exs. 3–5 (Kariblghossian's BOP medical records).

Since the onset of the COVID-19 pandemic, a number of courts have determined that inmates suffering from medical conditions similar to Kariblghossian's, including type 2 diabetes, obesity, and hypertension, have presented "extraordinary and compelling" circumstances that justify compassionate release. See, e.g., United States v. Rodriguez, 451 F.Supp.3d 392, 394 (E.D. Pa. Apr. 1, 2020) (determining, with respect to inmate suffering from conditions including diabetes and high blood pressure, "nothing could be more extraordinary and compelling than this pandemic"); United States v. Franco, No. 12 CR. 932 (PAC), 2020 WL 4344834, at *2–3 (S.D.N.Y. June 24, 2020) (concluding that inmate's diabetes, hypertension, and obesity, in combination with the COVID-19

pandemic, created extraordinary and compelling reasons warranting early release); United States v. Olawoye, No. 1:15-CR-00172-AA-5, 2020 WL 4559816, at *4 (D. Or. Aug. 7, 2020) (finding that extraordinary and compelling reasons warranted early release for inmate suffering from type II diabetes, obesity, high cholesterol, hypertension, and hepatitis A); United States v. Pena, 459 F.Supp.3d 544, 550 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension.").

However, in advance of oral argument, the parties informed the Court that Kariblghossian has now received both doses of the Pfizer BioNTech COVID-19 vaccine (the "Pfizer vaccine"). Specifically, Kariblghossian received his second dose of the Pfizer vaccine from the BOP on January 5, 2021. In large scale clinical trials, the Pfizer vaccine has demonstrated 95% effectiveness in preventing infection and was "100% effective at preventing severe disease." See Kathy Katella, *Comparing the COVID-19 Vaccines*, Yale Medicine (March 25, 2021), https://www.yalemedicine.org/news/covid-19-vaccine-comparison; see also FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download. As such, Kariblghossian's vaccination significantly reduces the risk that he will contract COVID-19 or become severely ill due to the virus. The Court therefore concludes that Kariblghossian has not met his burden to demonstrate that "extraordinary and compelling reasons," such as a disproportionately high risk of becoming severely ill due to COVID-19, justify compassionate release in his case. See e.g. United States v. Cortez, No. CR180085801PHXSPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) (denying compassionate release based on confirmation that "Defendant has received both doses of the Pfizer COVID-19 vaccine." ); United States v. Ballenger, No. CR16-5535 BHS, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021) (finding that defendant's "susceptibility to COVID-19 reinfection [was] nearly eliminated by vaccination" and, as such, defendant failed to meet his "burden to establish his entitlement to compassionate release."); United States v. Grummer, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release

because "[a]lthough Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.").

At the hearing and in his supplemental filing, Kariblghossian argued that his vaccination status should not preclude compassionate release because "the efficacy of the vaccine against the new and emerging variants is unknown." See Supp. at 5. The Court acknowledges that the efficacy of the Pfizer vaccine against new virus variants continues to be studied and that it is possible that new, more resistant variants could emerge in the future. Nonetheless, at this time, the available scientific evidence suggests that the Pfizer vaccine is highly effective against known variants of the SARS-COV-2 virus that causes COVID-19. See Yang Liu, et. al., *Neutralizing Activity of BNT162b2-Elicited Serum*, The New England Journal of Medicine (March 8, 2021), https://www.nejm.org/doi/full/10.1056/NEJMc2102017?query=featured_home (finding that the Pfizer vaccine demonstrated "roughly equivalent" virus neutralization with respect to variants first detected in the United Kingdom and Brazil, and "robust but lower" neutralization of the variant first detected in South Africa); see also Centers for Disease Control and Prevention, *About Variants of the Virus that Causes COVID-19* (Feb. 12, 20121), https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant.html ("So far, studies suggest that antibodies generated through vaccination with currently authorized vaccines recognize" the variants identified in the United Kingdom, South Africa, and Brazil). As such, the presence of these variants does not alter the Court's conclusion that Kariblghossian's vaccination significantly mitigates his risk of contracting severe COVID-19.

Pursuant to the FSA, "the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." United States v. Decator, No. 95-cr-0202-CCB, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020). Accordingly, the Court finds that Kariblghossian has not demonstrated "extraordinary and compelling" reasons that justify a reduction in his sentence at this time.

-6-

This finding is made without prejudice to a future showing by Kariblghossian that his health is at severe risk due to a vaccine-resistant strain of the SARS-COV-2 virus.

### C. Danger to the Community

"Even where extraordinary and compelling reasons exist," the Court "must consider whether the defendant is 'a danger to the safety of any other person or to the community[.]'" Mondaca, 2020 WL 1029024, at *3. "To make this assessment," the Court considers a number of factors "including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose." Id.

The government urges that Kariblghossian presents a continuing danger to the community that renders him ineligible for compassionate release. See Opp'n at 13–15. The government argues that Kariblghossian poses a danger to community, in part, because of his "lengthy criminal history," which places him in criminal history category VI. See id. at 14; see also Dkt. 33 ¶¶ 27–45 (Presentence Investigation Report). In addition, Kariblghossian was on probation at the time of the underlying offense and tested positive for heroin while in federal custody. Opp'n at 14; Dkt. 33 ¶¶ 44, 70. The government argues that not only physical violence and economic harm, but also "irresponsible social habits," endanger the community. See Opp'n at 14. Lastly, the government argues that defendant's situation is distinguishable from compassionate release cases involving defendants whose "significant medical issues and detailed release plans" established that they posed no danger to the community. See id. at 15.

Kariblghossian contends that he is not a danger to any person or the community. See Mot. at 12. Kariblghossian argues that though his criminal history is "arguably somewhat lengthy," his current and prior convictions were drug-related, nonviolent, and the result of his substance abuse and mental illness. See id. at 12; Reply at 3. Kariblghossian also

-7-

argues that a five-year period of supervised release and his "structured plan for release" mitigate any risks associated with his early release. See Reply at 3–4, 9; Mot. at 12. Kariblghossian's release plan includes drug treatment, residency with family, and facilities for continuing medical and psychiatric care. See Mot. Ex. 8 (Kariblghossian's release plan).

Kariblghossian has a lengthy history of drug offenses and other non-violent crimes, placing him in criminal history category VI.[2] That lengthy criminal history presents concern that Kariblgossian might endanger the community in the future, particularly given that he has a history of distributing controlled substances while on probation. A number of courts considering compassionate release during the COVID-19 pandemic have concluded that supervised release is insufficient to address the danger posed by the early release of an inmate with a category VI criminal history, even when that history is entirely nonviolent. For example, in United States v. Henry, the court denied compassionate release related to COVID-19 to a defendant serving 96 months' imprisonment for possession with intent to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, where the defendant committed the offense while on supervised release and probation, and had prior nonviolent drug-related convictions placing him in criminal history category VI. No. 3:15CR162, 2021 WL 682069, at *1–2, 5 (E.D. Va. Feb. 22, 2021). Though the Henry court acknowledged that a five-year supervised release would "adequately deter[ any] criminal conduct [by the defendant]," and commended the defendant's rehabilitation while in prison, the court found that the defendant did not face a particularized risk of contracting COVID-19 at his current location— because, subsequent to filing, defendant had been transferred from FCI Cumberland to a residential reentry center—and, as such, the defendant's "serious drug offense" weighed against early release.

---

[2] The Court notes that although Kariblghossian has no prior convictions on charges related to acts of violence or possession or use of firearms, he was convicted in 2010 for possession or sale of a switchblade. See Dkt. 33 ¶ 40.

Id., at *1, 5; see also United States v. Reece, No. 16-20088-JAR, 2020 WL 3960436, at *1, 7 (D. Kan. July 13, 2020) (denying supervised compassionate release to defendant serving 96 months' imprisonment for four counts of aiding and assisting in preparation of false income tax return, in part, because defendant committed the offense while "on probation, resulting in a substantial criminal history category VI classification"); but see United States v. Conner, 465 F. Supp. 3d 881, 882–83, 893–94 (N.D. Iowa 2020) (granting compassionate release to defendant in criminal history category VI charged with methamphetamine distribution because although "c]ommitting another federal offense while on supervised release is very serious," the fact that the defendant's criminal history was entirely nonviolent and that the defendant would be subject to a ten-year period of supervised release "reduce[d] whatever risk [the defendant] may [have] posed to the public.").

      Here, the Court considers Kariblghossian's argument that supervised release would mitigate any risk associated with his early release and acknowledges that, while his criminal history is lengthy, Kariblghossian does not have a history of violent conduct, which weighs against a finding that he would be dangerous to the community if released now. See Conner, 465 F. Supp. 3d at 893–94 (finding supervised release of an inmate, with nonviolent, category VI criminal history, sufficient to eliminate any danger posed by early release). In addition, it is significant that Kariblghossian has a detailed release plan and family ties in the community. See Mot. Ex. 8. Kariblghossian's release plan calls for him to receive residential drug treatment upon release and then reside with his brother, who can provide transport for Kariblghossian's ongoing medical and psychiatric care at nearby facilities. See id. The Court notes, however, that Kariblghossian is currently enrolled in the Residential Drug Abuse Program, a BOP program intended to provide comprehensive support for his rehabilitation efforts, and Kariblghossian has made no showing that he will receive superior rehabilitation support out of custody.

      Moreover, Kariblghossian's instant offense conduct involved distribution of controlled substances while on probation. Specifically, while on probation for evading a

police officer, see Dkt. 33 ¶¶ 41, 44, he twice sold over 50 grams of methamphetamine to an undercover law enforcement officer, see Dkt. 33 ¶¶ 8–9.  As such, especially given Kariblghossian's lengthy criminal history, questions remain regarding the extent to which court supervision can mitigate against future dangerous conduct, including a return to distributing narcotics.  On balance, the Court finds that compassionate release is not appropriate in this case due to the danger Kariblghossian could pose to others and to the community if released.

Because Kariblgossian has not demonstrated that he will not pose a danger to the safety of others or to the community if released, the Court does not reach the question of whether the remaining Section 3553(a) factors favor release.

## IV.  CONCLUSION

The Court **DENIES** Kariblghossian's motion for compassionate release, without prejudice.

**IT IS SO ORDERED.**

DATED:  March 29, 2021

                                        CHRISTINA A. SNYDER
                                      UNITED STATES DISTRICT JUDGE